IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GEORGE EDWARD JARRELL,      )
                                         )
        Plaintiff,            )
                                         )
    v.                        )         CASE NO. 1:16-CV-188-ECM
                                       )               (WO)
                                       )
SHERIFF DONALD VALENZA, et al.,  )
                                       )
        Defendants.      )

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

**I.  INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by George

Edward Jarrell ("Jarrell"), a pre-trial detainee confined in the Houston County Jail at the

time he initiated this case, challenging the adequacy of medical treatment provided to him

for injuries sustained during his arrest on September 20, 2014 immediately prior to his

confinement in the jail.  Doc. 1 at 2–3.  Jarrell names Donald Valenza, the Sheriff of

Houston County, Alabama, and Jason Smoak, a Certified Physician's Assistant employed

at the jail, as defendants.[2]  He seeks declaratory and injunctive relief for the alleged

violation of his constitutional rights.

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2]The evidentiary materials filed by the defendants establish that defendant Smoke's true name is Jason Smoak.  For purposes of clarity, the court will utilize the correct name of this defendant.

The defendants filed an answer, special report and supporting evidentiary materials — including affidavits and certified medical records — addressing Jarrell's inadequate medical treatment claim. In these documents, the defendants assert Jarrell received appropriate treatment for his injuries as determined by the jails medical professionals and they adamantly deny acting with deliberate indifference to Jarrell's medical needs.

The court issued an order directing Jarrell to file a response to the arguments set forth by the defendants in their special report and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. Doc. 17 at 3. The order specifically advised the parties that "at some time in the future the court may treat the defendants' report . . . [as] either a motion to dismiss or motion for summary judgment[.]" Doc. 17 at 3. In addition, the order specifically cautioned the parties that "<u>unless within ten (10) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken</u> . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and <u>without further notice to the parties</u> (1) treat the special report and any supporting evidentiary materials as a [dispositive] motion, and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." Doc. 17 at 4 (emphasis in original) (footnote omitted). Jarrell filed a sworn response to this order on June 28, 2016 in which he challenges the treatment decisions made by defendant Smoak. Doc. 18.

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the defendants' report as a motion for summary judgment.  Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response in opposition, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed.R.Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of

---

[3]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." Fed.R.Civ.P. 56 Advisory Committee Notes.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24.  The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").  Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements],

or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a

showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted).  Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute

of material fact exists).   At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).   What is material is determined by the substantive law applicable to the case.   *Anderson*, 477 U.S. at 248.   "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."   *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).   "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."   *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).   "[T]here must exist a conflict in substantial evidence to pose a jury question."   *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .   Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"   *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323–24.  A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.  *Id*.  To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence which would be admissible at trial the existence of a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Jarrell's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Jarrell has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III.  DISCUSSION

Jarrell asserts defendant Smoak denied him adequate medical treatment for neck, head, back and shoulder pain emanating from injuries suffered immediately prior to his incarceration in the Houston County Jail.  Jarrell also appears to argue that Sheriff Valenza acted with deliberate indifference because Valenza failed to intervene regarding the course of treatment provided by Smoak.  As discussed in detail below, Jarrell fails to demonstrate a genuine dispute of material fact sufficient to preclude entry of summary judgment in favor of the defendants.

### A.  Applicable Legal Standard

The actions about which Jarrell complains occurred from September of 2014 until the filing of this complaint in March of 2016.  It is undisputed that Jarrell was a pretrial detainee at the time relevant to the complaint.  Jarrell's claims are therefore subject to review under the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment which governs claims of convicted inmates.  *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the

mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). "[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). As to these claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

> In a recent decision addressing a pretrial detainee's excessive force claim, the United States Supreme Court held that under the Fourteenth Amendment the detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable.... A court must make this determination from the perspective of a reasonable [official] on the scene, including what that [official] knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). The court in *Kingley* reaffirmed that a defendant "must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind. That is because ... 'liability for ***negligently*** inflicted harm is categorically beneath the threshold of constitutional due process.' *Id*. at 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). The Court

further emphasized that the 'guarantee of due process has [historically] been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property.'" *Id.*

The Supreme Court has not yet ruled on whether to extend the objective reasonableness standard of review set forth in *Kingsley* to cases of pretrial detainees which do not involve the use of excessive force (i.e., cases challenging medical treatment or conditions of confinement). However, an extensive search of post-*Kingsley* cases indicates that the vast majority of federal courts, including [this court and] the Eleventh Circuit Court of Appeals, have continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees which challenge medical treatment and other conditions. *E.g.*, *Massey v. Quality Correctional Health Care, Inc., et al.*, 2015 WL 852054 (M.D. Ala. Feb. 26, 2015), affirmed on appeal, [*Massey v. Montgomery County Detention Facility*, 646 F. App'x 777] (11th 2016) (addressing claims of a pretrial detainee challenging the medical treatment provided to him while in a county jail, without reference to *Kingsley*, and applying the deliberate indifference standard to find that the defendants' actions did not rise to the level of deliberate indifference); *McBride v. Houston County Health Auth.*, 2015 WL 3892715, *10 & 15-20 (M.D. Ala. June 24, 2015) (recognizing the impact of *Kingsley* on excessive force claims brought by pretrial detainees but subsequently applying the deliberate indifference standard to the plaintiff pretrial detainee's medical treatment claim) [*affirmed* 658 F. App'x 991 (11th Cir. 2016) (holding that district court properly applied the deliberate indifference standard of the Eighth Amendment in denying summary judgment to defendant on pretrial detainee's challenge to constitutionality of medical treatment provided for skin condition)]; *White v. Franklin*, 2016 WL 749063, at *5-8 (N. D. Ala. Jan. 28, 2016), adopted, 2016 WL 741962 (N.D. Ala. Feb. 25, 2016) (applying *Kingsley's* objective reasonableness standard to pretrial detainee's claim of excessive force but addressing his claims of inadequate medical treatment under the deliberate indifference standard of the Eighth Amendment in accordance with prior Eleventh Circuit precedent); *Woodhouse v. City of Mount Vernon, et al.*, 2016 WL 354896, at *10 n.4 (S.D.N.Y. Jan. 26, 2016) (applying "a subjective standard to [detainee's] Fourteenth Amendment claim of deliberate indifference to serious medical needs, just as it would to an Eighth Amendment claim brought by a convicted prisoner," despite *Kingsley*); *Thomley v. Bennett, et al.*, 2016 WL 498436, at *7 (S.D. Ga. Feb. 8, 2016), adopted, 2016 WL 3454383 (S.D. Ga. Mar. 14, 2016) (finding *Kingsley* does not "provide[] the standard to be applied" to pretrial detainee's medical treatment claims).

As indicated above, the Eleventh Circuit recently applied the deliberate indifference standard to a pretrial detainee's claims challenging the constitutionality of medical treatment provided to him by health care personnel at a county jail. *See Massey*, [646 F. App'x at 781]. In affirming the trial court's decision to grant summary judgment for the defendants, the Court held:

> There is ... no basis for [Plaintiff's] claim that [the defendant physicians'] diagnosis and treatment of his ailments rose to the level of deliberate indifference. There is a difference between "mere incidents of negligence or malpractice" and deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991). The former, "while no cause for commendation, cannot . . . be condemned as the infliction of punishment" in violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 1979 (1994). The latter, by contrast, is a violation of the Eighth Amendment, but requires the plaintiff to prove that the defendant knew of a serious risk to the plaintiff and affirmatively disregarded it. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999). There is no genuine dispute that [the jail physicians] actively attempted to diagnose and treat [Plaintiff]. The treatment they offered may not have been as effective or instantaneous as [Plaintiff] would have liked, but the bare fact that treatment was ineffectual or not immediately administered does not mean that those responsible for it were deliberately indifferent. Because the record does not establish a genuine dispute that [the attending physicians] made a good-faith effort to treat [Plaintiff's] ailments, summary judgment was appropriate.

> *Id*. The Sixth, Seventh and Ninth Circuits are in accord. *See Baynes v. Cleland*, 799 F.3d 600, 617-18 (6th Cir. 2015); *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015); *Castro v. County of Los Angeles*, 797 F.3d 654, 664-65 (9th Cir. 2015).

*Smith v. Terry*, 2016 WL 4942066 at *3 (M.D. Ala. Aug. 15, 2016), Recommendation adopted, 2016 WL 4923506 (M.D. Ala. Sept. 14, 2016); *Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (holding that a pre-trial detainee's "claims are evaluated under the same [deliberate indifference]

standard as a prisoner's claim of inadequate care under the Eighth Amendment" and specifically refusing to extend the objective reasonableness standard set forth in *Kingsley* to such claims).

Other district courts post-*Kingsley* have also applied the deliberate indifference standard of the Eighth Amendment in deciding medical claims presented by pretrial detainees. *Oliver v. County of Gregory*, 2016 WL 958171, at \*6 n.11 (D. So. Dakota Mar. 8, 2016) (noting that the holding in *Kingsley* "was limited to excessive force cases under the Fourteenth Amendment as set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994). Thus, the Eighth Circuit still utilizes the subjective measure of deliberate indifference ... for pretrial detainees in Fourteenth Amendment cases involving an allegation of deprivation of medical care."); *Hall v. Ramsey County*, 801 F.3d 912, 917 n.3 (8th Cir. 2015) (noting *Kingsley's* holding in discussion of pretrial detainee's excessive force claim and then applying subjective prong of deliberate indifference to his deprivation of medical care claim.); *Bilal v. Geo Care, LLC, et al.*, 2016 WL 345514, \*6 (M.D. Fla. Jan. 1, 2016) (acknowledging *Kingsley* but finding that "[t]he relevant state of mind for a condition[s] claim [*i.e.*, deprivations of food, medical care, sanitation or other objectionable conditions,] is deliberate indifference."); *Figueira by and through Jarrell v. County of Sutter*, 2015 WL 6449151 (E.D Calif. Oct. 23, 2015) (holding that despite *Kingsley* pretrial detainee "must show the defendants acted with deliberate indifference to his serious medical needs[]" as required by prior Ninth Circuit law applying same legal standard to Eighth and Fourteenth Amendments claims challenging conditions claims,

including those alleging a denial of adequate medical treatment); *Gilbert v. Rohana*, 14 Civ. 630, 2015 WL 6442289, at *4 (S.D. Ind. Oct. 23, 2015) ("The court finds that *Kingsley* did not alter the legal standard for denial of medical treatment claims brought by pretrial detainees like Plaintiff. *Kingsley* was limited to excessive force claims brought by pretrial detainees; the Court did not comment on the appropriate standard for denial of medical treatment claims brought by such detainees."); *Larson v. Stacy*, 2015 WL 5315500, at *6-9 (N.D. Ala. Aug. 18, 2015), Recommendation adopted, 2015 WL 7753346 (N.D. Ala. Dec. 2, 2015) (court utilized objective reasonableness standard to address pretrial detainee's excessive force claims but applied deliberate indifference standard to his medical care claims); *Johnson v. Hodgson*, 2015 WL 5609960, at *5 (D. Mass. Sept. 22, 2015) (court acknowledged application of *Kingsley* to pretrial detainee's excessive force claim but stated deliberate indifference standard was proper standard for review of his inadequate medical treatment claims); *Landy v. Isenberg*, 2015 WL 5289027, at *4 (D. Md. Sept. 9, 2015) (same); *Wells v. T.C.C.F.*, 2015 WL 4875872, at *2 (N.D. Miss Aug. 15, 2015) (recognizing that under *Kingsley* "[m]ere negligence . . . will not support the finding of a constitutional violation" on a pretrial detainee's challenge to medical care and then holding that to proceed on such a claim "a detainee must demonstrate" each of the elements of deliberate indifference); *Roberts v. C-73 Medical Director*, 2015 WL 4253796, at *3 (S.D. N. Y. July 13, 2015) ("The decision in *Kingsley* dealt only with excessive force claims, thus [this] Court continues to abide by Second Circuit precedent setting forth a subjective standard for cases involving

14

allegations of deliberate indifference to a pretrial detainee's serious medical needs."); *Kennedy v. Bd. of Commissioners for Oklahoma County*, 2015 WL 4078177, at *1 n.6 (W.D. Okla. July 6, 2015) (holding that the Supreme Court's decision in *Kingsley* "does not alter the [deliberate indifference] standard applicable to medical care claims" of pretrial detainees.); *Austin v. County of Alameda*, 2015 WL 4051997 at *3 (N.D. Cal July 2, 2015) (same).

Based on the foregoing authorities, the court deems it appropriate to apply the deliberate indifference standard to Jarrell's claim of inadequate medical treatment, instead of the objective reasonableness standard applied to the excessive force claim before the Court in *Kingsley*.[1]

## B. Deliberate Indifference

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, jail and medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a

---

[1]Under the facts of this case as set forth below, the court finds that regardless of the standard applied — deliberate indifference or objective reasonableness — Jarrell's claims do not survive summary judgment.

plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from

those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, defendant must know of and then disregard an excessive risk to prisoner's health or safety).   Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).[2]  This is likewise true for a claim reviewed under the objective reasonableness standard.  Thus, to proceed on a claim challenging the constitutionality of medical care under either standard of review, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment.  *Estelle*, 429 U.S. at 104-97, 97 S.Ct. 285.  An allegation of negligence is insufficient to state a due process claim.  *Daniels v. Williams*, 474 U.S. 327, 330-33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)." *Simpson v. Holder*, 200 F.App'x 836, 839 (11th Cir. 2006); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) (Due to "the state of mind requirement for all due process violations[,] . . . medical malpractice and negligence claims are not actionable under § 1983, but are the grist of state law.); *Kingsley*, --- U.S. at ---, 135 S.Ct. 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1999)) (With respect

---

[2] A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting *Hill*, 40 F.3d at 1187, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

to the "legally requisite state of mind" attendant to a defendant's physical acts in determining the objective reasonableness of such acts, "the defendant must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind.  That is because . . . 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'"); *Estelle*, 429 U.S. at 106 (neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 835–36 (A complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Daniels*, 474 U.S. at 332 (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries. . . .  We have previously rejected reasoning that would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.") (internal quotations omitted); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint alleging "misdiagnosis and inadequate treatment [as such] involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164,

168 (4th Cir. 1998) (holding that negligence in misdiagnosis of pituitary tumor not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding that plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3-4 (M.D. Fla. Aug. 30, 2012) (finding that misdiagnosis of inmate with Ganglion cyst that "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . . At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved. Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim.").  In addition, *Kingsley's* requirement of a purposeful or knowing state of mind, its assertion that due process protects only against deliberate acts and its affirmation that negligence categorically fails to provide a basis for liability in section 1983 actions, --- U.S. at---, 135 S.Ct. at 2472, serves to preclude the constitutionalization of medical malpractice claims such as those which allege misdiagnosis or negligent

treatment of a condition.  Consequently, merely accidental inadequacy, negligence in diagnosis, negligence in treatment and medical malpractice do not suffice to establish the objective component of claims seeking relief for alleged constitutional violations regarding medical treatment provided to an inmate, whether he is a pretrial detainee or convicted prisoner.

Furthermore, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]"  *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every

claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks omitted).  "A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact inmate desires a different mode of

treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir.1990)).

## C. Physician's Assistant Jason Smoak

Jarrell complains that defendant Smoak denied him treatment for injuries sustained immediately prior to his incarceration in the Houston County Jail. Doc. 1 at 2-4. In support of this assertion, Jarrell alleges he has "been denied Xrays and treatment for 1½ years." Doc. 1 at 3.

Defendant Smoak responds to the claims presented by Jarrell, in pertinent part, as follows:

> In addition to funding three full time nurse positions; one Certified Medical Assistant ("CMA"); one full time Certified Physician's Assistant ("PA-C"); a doctor contracted as the Clinic Medical Director and staff doctor; and, a registered supervising pharmacist for the provision of medical care to inmates such as the plaintiff, the County Jail provides a general medical clinic for medical problems that may arise in the jail. The medical clinic is held daily, Monday through Friday. The jail also has a nurse or CMA on duty on Saturdays and Sundays. The clinic is staffed by the staff physician and/or myself as the Certified Physician's Assistant under the supervision of the physician. The nurses or CMA are in the Pods each day passing out inmate medications as well. Thus, inmates are given daily access to either the doctor, PA-C, nurses, or CMA services and the general medical clinic as well as the hospital emergency room services, if

necessary.   Either the doctor or I are "on call" to the jail on a 24 hour a day, seven days a week, basis.

It is the policy of the Houston County Jail that all requests for medical treatment are forwarded to the jail's medical staff with the expectation that appropriate and necessary medical treatment will be provided to or obtained for the inmate.

. . .   The plaintiff complains of having a broken shoulder, of pain caused by injuries not occurring in the jail, and of being denied x-rays and treatment.   Yet, as you will see in the medical summary, the plaintiff was treated in the jail medical clinic on numerous occasions.   Also, an x-ray of the plaintiffs shoulder is not necessary and he has received treatment for his complaints.   The plaintiff was seen in the medical clinic and/or by medical staff at least ten (10) times.   The medical file and treatment provided to plaintiff, is summarized as follows:

9/20/14:   Inmate Jarrell was seen in the medical clinic for intake evaluation.   Current wound requiring treatment: facial ecchymosis. Current medical complaint: facial pain/headache/left side ribs Inmate was in no apparent distress, alert and oriented x3.   Inmate complains of pain to face, headache and left side ribs hurting. Upon physical examination, inmate has bruised left eye and large abrasion across his forehead from altercation during his arrest, states "face shoved into asphalt by cops."
Inmate Jarrell's medical treatment plan was provided as follows:
1.  Tylenol 1gm by mouth twice a day for 30 days (#62)
2.  Return to see Smoak on Monday

9/24/14:   Inmate Jarrell was seen in the medical clinic with complaints of lower back and rib pain after an altercation prior to coming to jail.   Inmate Jarrell reports prior to coming to jail, during arrest fought with narcotic officers, and complaining of dizziness, left side rib pain, and lower back pain.   Also reports decreased memory since fight.   Past medical history of Degenerative Disk Disease in lower back and is followed by Hughston Clinic.
Upon physical examination, inmate Jarrell was under no apparent distress.
Multiple abrasions noted to left side of forehead & scalp.   Bruising to left eye without swelling.   Bruising to left temporal region.   His pupils were equal round and reactive to light, all extra ocular muscles were in tact, his tympanic membrane visible, sclera clear, nares patent, no evidence of deviation or fracture, Mouth negative for tooth fracture, mandible is clear, full range of motion without

pain.  Neck:  pain with motion, negative bony tenderness;  Chest: no bruising or swelling, tender to left rib area;  Clear auscultation bilaterally, heart had regular rate and rhythm; Abdomen:  soft non tender and no descendent;  Back: Positive tenderness starting at L1-S1, negative bony step off, Ambulates slowly but without assistance, para lumbar muscle tenderness left more than right, no discoloring or bruising;  Ext: no clubbing cyanosis edema, moves all extremities, grip strength 5/5 bilateral.

For inmate's complaints of altercation with head trauma, abrasion and lower back pain, inmate Jarrell's treatment plan was provided as follows:

1. CT head without contrast on 9-25-14
2. Motrin 60 mg by mouth twice daily for 30 days
3. Flexeril 10 mg by mouth twice daily for 10 days
4. Return to clinic after CT scan (9-26-14)

9/25/14:   Results of CT scan without contrast from Southeast Alabama Medical Center.

History:  Trauma, hit left side of head with headache and dizziness.

Findings:  No extra axial fluid collection, no midline shift.  No CT finding of infarct, hemorrhage, or mass.  No calvarial abnormality seen.  In the white matter posterior to the right lateral ventricle, there is an area of low density I suspect is probably a small extension of the posterior horn of the lateral ventricle and less likely evidence of remote lacunar infarct.

Impression: Head CT shows no acute intra-cranial  abnormality.

Stephen L. Fernandez, MD

9/26/14:   Inmate Jarrell was seen in the medical clinic for a follow up of his CT scan of the head.  The CT scan of head with no acute process and has a new complaint of fungus on feet.

Inmate Jarrell's treatment plan was provided as follows:

1. Concussion - continue meds as ordered
2. Athlete's feet - ketoconazole cream given

2/21/15:   Inmate Jarrell was seen in the medical clinic with complaints of a fever.  Inmate Jarrell has a temperature of 101.3. He was given 2 Tylenol and 600mg Ibuprofen[.] Inmate was quarantined.

2/22/15:   Inmate Jarrell was seen in the medical clinic for follow up on fever.   Current temperature is 99.   Temp check done by

Sgt. Peterson and medication given for elevated temp. When temp check done in dorm today and medication was offered to Inmate, a cold pack, inmate refused and stated "I can't afford it" and refused to have medication put on cart. Inmate was told he would be put on medical lock down because he was making other inmates in the dorm sick because he refused to seek or take medication. Sgt. Watson was with [the] nurse and was instructed to keep inmate locked in and away from other inmates until afebrile (no longer running a fever).

2/24/15:   Inmate Jarrell was seen in the medical clinic for fever. Inmate states he feels "like I have the flu" body aches and some congestion.

Upon physical examination, inmate Jarrell was under no apparent distress, his vital signs were stable. His pupils were equal round and reactive to light. scerla clear, nares patent, throat clear

Neck supple and lungs clear to auscultation bilaterally.

Inmate Jarrell's treatment plan was provided as follows:

1. Influenza is improving
2. Last documented fever was 2-22-15
3. Return to clinic as needed

4/1/15:     Inmate Jarrell was seen in the medical clinic for right shoulder pain. Inmate claims his shoulder needs to be x-rayed due to altercation with police officers in September, 2014. My notes are as follows:

47 year old white male with complaint of right shoulder pain. Reports pain has been present since his arrest in Sept 2014, states the police injured his shoulder and wants Houston County to fix it. Inmate denies recent injury. I reviewed notes from September 24, 2014; Inmate did not complain[] of right shoulder pain.

Upon physical examination, inmate Jarrell was under no apparent distress, his vital signs were stable. Inmate was agitated and demanding x-rays for shoulder. There was no evidence of acute injury to his right shoulder, no swelling, ecclymosis (bruising), or effusion present. There was minimal tenderness to AC joint & SA joint space, active range of motion was limited to 90° forward flection and abduction secondary to pain, passive range of motion limited to 90º abduction and forward.

Inmate Jarrell's treatment plan for right shoulder pain was provided as follows:

1.  No x-rays needed at present time since no evidence of acute injury

2.  Offered Inmate Motrin for pain control and he refused - Refusal form signed

3.  If Inmate changes mind about medication he was instructed to write request

4. Return to clinic as needed.

4/18/15:  Inmate Jarrell was seen in the medical clinic with the complaint of "injured face on metal bunk".  Inmate states that he banged his face on a metal bunk when he stood up in cell while cleaning it.

Upon physical examination, inmate Jarrell had a single linear scratch on right facial area from temporal area on right straight down cheek to chin. There was no active bleeding and the area was cleaned with iodine.  No bleeding was noted. No tetanus booster given at this time.

Inmate Jarrell's treatment plan was provided as follows:

1. Triple Antibiotic Ointment packets were given to inmate to keep on his person.

4/1/16:   Inmate Jarrell was seen in the medical clinic for COPD. Inmate reports that he has COPD, he usually only has attacks when he inhales pet dander.  Inmate recently noticed cell has increase[d] dust and he had episode last night where he awoke from sleep gasping for air and felt throat closing up.  Symptoms have resolved at present time.  Upon physical examination, inmate was in no apparent distress, and his vital signs were stale.

HEENT (head, ears, eyes, nose & throat): no congestion, throat clear, airway patent

Lungs: clear to diminished, air movement heard in all lung fields, unlabored.

Inmate Jarrell's treatment plan was provided as follows:

1. Seasonal Allergy

2. Prescribed Benadryl 50 mg by mouth at night for 30 days

3. Return to clinic as needed

5/4/16:   Inmate Jarrell was prescribed Claritin 10 mg by mouth every morning for 90 days.

5/13/16: Inmate Jarrell was seen in the medical clinic for an inhaler.  Inmate complains of lung problem that causes a lot of

mucos [sic] build up.   Inmate states that Benadryl helps, the
Claritin is not working.   Inmate requested an inhaler and Benadryl.
Inmate states he has a fungus in his lungs.  Keeps saying it is real
close to cancer.  Inmate states "I died in my sleep and woke up and
got me some water to clear my nasal passages."
Inmate Jarrell's vital signs were stable, no congestion was noted,
his throat was clear, his airway was patent, his lungs were clear and
air movement heard in all fields and were unlabored
Inmate Jarrell's treatment plan was provided as follows:
1.  Continue medication as ordered
2.  Return to clinic as needed

As shown in the medical summary above, plaintiff was seen on
September 20, 2014, for his initial evaluation.  He was seen four days later
on September 24, 2014, when he complained [of] pain and dizziness.  A CT
scan was ordered for the plaintiff and performed on September 25, 2014,
and a follow up was done the next day in the clinic.  Over six months later,
on April 1, 2015, the plaintiff claimed his shoulder needed to be x-rayed.
After an evaluation, I determined that plaintiff had no acute injury to the
shoulder and that he needed no x-rays for the shoulder because there was no
evidence of acute injury.   I offered Motrin for pain control to plaintiff,
which he refused.   Plaintiff was seen in the medical clinic at least three
times after April 1, 2015, and did not mention shoulder pain.

Doc. 16-5 at 2–6.

Under the circumstances of this case, the court concludes that the course of

treatment undertaken by defendant Smoak did not violate Jarrell's constitutional rights as

it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or

to be intolerable to the fundamental fairness."   *Harris*, 941 F.2d at 1505.   Although

Jarrell alleges defendant Smoak refused to order x-rays for his shoulder, whether Smoak

"should have [approved] additional diagnostic techniques or forms of treatment 'is a

classic example of a matter for medical judgment' and therefore not an appropriate basis

for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal

citation omitted); *Garvin*, 236 F.3d at 898 (holding that difference of opinion regarding manner in which to address a medical complaint fails to demonstrate a constitutional violation); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991) (The failure of medical personnel to pursue alternative means of treating inmate's condition does not "rise beyond negligence to the level of [deliberate indifference].");  *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).   In addition, Jarrell has failed to present any evidence which indicates defendant Smoak knew that the manner in which he provided treatment to Jarrell created a substantial risk to Jarrell's health and that with this knowledge consciously disregarded such risk.   The record is therefore devoid of evidence, significantly probative or otherwise, showing that defendant Smoak acted with deliberate indifference to Jarrell's medical needs.   Moreover, under the circumstances of this case, it is clear that the medical treatment provided to Jarrell was objectively reasonable.   Consequently, summary judgment is due to be granted in favor of defendant Smoak.

### D.  Sheriff Donald Valenza

It is clear from the evidentiary materials submitted by the defendants that Sheriff Valenza is not in any way involved in decisions regarding medical treatment provided to inmates.   To the extent the complaint can be construed to assert that Sheriff Valenza

acted with deliberate indifference because he did not intervene in the treatment furnished by the medical care provider, this assertion entitles Jarrell to no relief.

Initially, Jarrell has failed to establish deliberate indifference on the part of defendant Valenza as he has not demonstrated that Valenza was aware of facts establishing "an objectively serious medical need" nor that this defendant consciously disregarded any known serious risk to Jarrell's health resulting from the infection in his knee. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).   The failure to alleviate significant risk that officer "should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

Insofar as Jarrell seeks to hold defendant Jennings liable for the treatment provided by a medical professional, he is likewise entitled to no relief as

> "[t]he law does not impose upon [jailers] a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.  *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [jail] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).  Moreover, "[i]n light of the Court's determination that there was no constitutional deprivation, there is no basis for supervisor liability."  *Nam Dang*, 871 F.3d at 1283, citing *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008); *Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007).  Accordingly, summary judgment is due to be granted in favor of Sheriff Valenza.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **September 4, 2018** the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual

and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 17th day of August, 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE